UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 14-142-HRW

UNITED STATES OF AMERICA,                                                                 PLAINTIFF,

v.                              MEMORANDUM OPINION AND ORDER

REAL PROPERTIES LOCATED IN
SCIOTIO AND LAWRENCE COUNTIES
OHIO, WITH ALL IMPROVEMENTS AND
APPURTENANCES THEREON, OWNED BY
PAUL R. VERNIER, SHERRY L. VERNIER
AND BLESSED REATLY, LLC, *et al.*,                                                  DEFENDANTS.

This matter is before the Court upon Paul R. Vernier's Petition for Partial Release of Seized Property for Cost of Defense [Docket No. 88]. The matter has been fully briefed by the parties [Docket Nos. 89 and 90]. For the reasons set forth herein, the Court will deny the Petition.

I.

Paul R. Vernier owned and operated Community Counseling and Treatment Services ("CCTS"), a purported addiction treatment clinic that, along with its physicians and others, unlawfully diverted controlled substances in violation of 18 U.S.C. § 841, engaged in fraudulent billing practices in violation of 18 U.S.C. § 1347, and laundered criminal proceeds in violation of 18 U.S.C. §§ 1956 and 1957.

The United States initiated this civil forfeiture action in 2014, against property that it alleges represents proceeds of CCTS. In its Complaint, the United States alleges that such property represents proceeds drug trafficking and/or was used to facilitate drug trafficking,

represents proceeds of money laundering and/or was involved in money laundering offenses, and/or represents proceeds of health care fraud. [Verified Complaint, Docket No. 1]. The funds seized exceed $ 2,000,000.00.

In 2016, Vernier filed a Verified Claim to two pieces of real property and funds seized from six financial accounts. [Docket No. 19].

In early, 2017, this Court entered an order staying this case pending the conclusion of an ongoing criminal investigation in Ohio of Vernier. [Docket No. 67].

Vernier agreed to the stay.

On March 27, 2019, a grand jury in Lawrence, County, Ohio, returned charges against Vernier for (1) theft under O.R.C. § 2913.02(A)(3); (2) Medicare fraud under O.R.C. § 2913.40(B); and (3) trafficking in drugs under O.R.C. § 2925.03. [*State of Ohio v. Paul R. Vernier*, Case No. 19CR000114, Indictment, Docket No. 89-1]. The case is set for trial in May 2021.

In December 2019, Vernier filed a motion with the state court seeking the release of funds seized by the United States in order to pay his counsel. The motion was overruled for lack of jurisdiction.

Now, Vernier seeks the same relief from this Court, to-wit, immediate release of all seized property, or a substantial portion (not less than $100,000.00) for his defense against the criminal charges pending against him in Ohio.

The United States opposes the motion.

## II.

18 U.S.C. § 983(f) provides a mechanism for the release of property during the pendency of a civil forfeiture proceeding in certain circumstances in which the Government's continued possession would create a substantial hardship on persons claiming an interest in the property.

In order to obtain release of seized property, a claimant must demonstrate:

> (A) the claimant has a possessory interest in the property;
> (B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of the trial;
> (C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless;
> (D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and
> (E) none of the conditions set forth in paragraph (8) applies.

18 U.S.C. § 983(f)(1).

The statute includes specific exclusions, set forth in Section (8):

> (8) This subsection shall not apply if the seized property—
>
> (A) is contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized;
> (B) is to be used as evidence of a violation of the law;
> (C) by reason of design or other characteristic, is particularly suited for use in illegal activities; or
> (D) is likely to be used to commit additional criminal acts if returned to the claimant.

18 U.S.C. § 983(f)(1), (8).

To obtain release under this statute, a claimant must submit a petition to the district court setting forth "the basis on which" the claimant has met all of these "requirements" for release.

§ 983(f)(3)(A),(B). The district court, in turn, can order release of properly seized property only if "the claimant demonstrates that the requirements ... have been met." § 983(f)(6).

### III.

Vernier blithely maintains that he meets the requirements set forth above and, as such, is entitled to immediate release to no less than $100.000.00 of the seized assets. However, he ignores the explicit terms of the statute. The statute by its own terms excludes seized currency. Indeed, the only exception for the release of seized currency under this provision is if it "constitutes the assets of a legitimate business which has been seized." 18 U.S.C. § 983(f)(8)(A). As Plaintiff points out, no legitimate business has been seized here. The business seized is alleged to have been one of drug trafficking, money laundering and health care fraud. Vernier has not presented evidence establishing otherwise.

Moreover, Vernier cannot satisfy the conditions set forth in Section (1). § 983(f)(1)(B) requires the claimant to have "sufficient ties to the community to provide assurance that the property will be available at the time of the trial." In addition, Section 983(f)(1)(D) requires the likely hardship to outweigh "the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding." "[Section] 983(f) places great emphasis on ensuring the preservation of any released property pending final disposition of forfeiture proceedings." *United States v. Undetermined Amount of U.S. Currency*, 376 F.3d 260, 265 (4th Cir. 2004).

Yet here, Vernier seeks the release of funds to use for his defense of the pending state criminal action—in other words, he seeks the release of funds for their dissipation. Under these circumstances, there is no way to ensure the availability of the property for forfeiture as required by statute.

Nor can Vernier establish that the "likely hardship" outweighs the risk of loss. Vernier contends that the "likely hardship" is not having funds to pay for his counsel, expert witnesses, and other items in his defense against the criminal charges he faces in Ohio.

Although § 983(f) never defines "hardship," it does provide some examples of the hardship Congress deemed sufficient to provide grounds for release of seized property, i.e. hardship "preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless." § 983(f)(1)(C). Paying legal fees is not among the statutory exemplars.

Nor is it contemplated. Congress has explicitly provided for legal representation, under certain conditions, for claimants in civil forfeiture actions. If Congress had intended the release of seized assets to be used for legal fees it would not have expressly permitted appointment of legal counsel. *See United States v. Undetermined Amount of U.S. Currency*, 376 F.3d at 267.

Although not suggested by Vernier, his "hardship" lacks constitutional dimension as well. *Id.* High ranking precedent remains that a criminal defendant has no constitutional right to use forfeitable property to pay counsel. *See Caplin & Drysdale Chartered v. United States*, 491 U.S. 617 (1989) and *United States v. Monsanto*, 491 U.S. 600 (1989).[1]

---

[1] In *Caplin & Drysdale*, the Court held that Congress may require the forfeiture of criminally derived proceeds, even if those proceeds are used for legal representation, without running afoul of the Sixth Amendment right to counsel. *Caplin & Drysdale,* 491 U.S. at 625-628. Notably, *Caplin & Drysdale* did not alter or refine the meaning of the Sixth Amendment limitation to the exemption in § 1957(f)(1) by its holding that the Sixth Amendment alone does not require an exemption from forfeiture for tainted proceeds used for attorneys' fees. Rather, the highlights the contrast between Congress's failure to exempt criminally derived proceeds used for attorneys' fees from forfeiture and its subsequent decision to exempt such proceeds from criminal penalties.

In *Monsanto*, a companion case to *Caplin & Drysdale,* the Court considered a pretrial restraining order that prevented a not-yet-convicted defendant from using certain assets to pay for his lawyer. The defendant argued that, given this difference, *Caplin & Drysdale* 's conclusion should not apply. The Court noted, however, that the property at issue was forfeitable under the

### IV.

Accordingly, **IT IS HEREBY ORDERED** that Paul R. Vernier's Petition for Partial Release of Seized Property for Cost of Defense [Docket No. 88] be **DENIED**.

This 6th day of April 2021.



Signed By:
<u>Henry R Wilhoit Jr.</u>
United States District Judge

---

same statute that was at issue in *Caplin & Drysdale*. 491 U.S. at 625-628 And, as in *Caplin & Drysdale,* the application of that statute to Monsanto's case concerned only the pretrial restraint of assets that were traceable to the crime; thus, the statute passed title to those funds at the time the crime was committed. The *Monsanto* Court said that *Caplin & Drysdale* had already weighed the very interests at issue.

    Informing both opinions is the notion, that although the criminal defense bar had urged Congress to exclude from civil forfeiture those assets that the defendant wants to use to pay an attorney, Congress has declined to do so.